IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRUCE ALLEN ADES, | § | |
|      PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:26-CV-971-S-BK |
| | § | |
| SCOTT KENNETH HOMER BESSENT, | § | |
| SECRETARY, U.S. DEPARTMENT OF | § | |
| THE TREASURY, | § | |
|      DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order* 3, this *pro se* action was automatically referred to the United States Magistrate Judge for judicial screening.  On March 26, 2026, Plaintiff filed a complaint seeking a writ of mandamus, as well as declaratory and injunctive relief under the administrative procedure act ("APA").  Doc. 3.  That same day, Plaintiff also filed an *Emergency Motion for Temporary Restraining Order and Preliminary Injunction*, Doc. 4, requesting the same relief on an expedited basis.

Plaintiff's complaint arises from the IRS's assessment of a civil penalty against him in the amount of $62,582.00 for his failure to report ownership of foreign bank accounts as required by the Bank Secrecy Act.  *See* 31 U.S.C. § 5314(a) (imposing reporting requirements on any United States citizen or resident who "makes a transaction or maintains a relation for any person with a foreign financial agency.").  In 2006, Plaintiff entered an agreement to repay the Foreign Bank Account Reporting ("FBAR") penalty by authorizing the government to offset portions of his Social Security benefits and federal travel reimbursements from his employer, the Department of Housing and Urban Development ("HUD"), until the debt was satisfied.  Doc. 3

at 2.  He alleges that, since that time, he has paid more than $60,000 toward the original $65,582 debt through an initial payment and ongoing monthly offsets, which now total $3,375 per month. Doc. 3 at 3.

Despite these payments, Plaintiff contends that the Treasury Department's Bureau of Fiscal Services (BFS) now asserts he owes $123,000, without providing an explanation or adequate accounting of how that amount was calculated.  Doc. 3 at 5-8.  Plaintiff alleges that the Treasury's refusal to provide an accurate accounting, while continuing collections through the offsetting program, violates his Fifth Amendment rights, 5 U.S.C. § 706(2)(A) of the APA, and the Treasury's statutory duty under 31 U.S.C. § 3711(g) to provide an accurate accounting of the debt upon request.  Doc. 3 at 11-14.

In his motion for a temporary restraining order ("TRO"), Plaintiff seeks an emergency order enjoining all offset collections from his Social Security benefits and travel reimbursements. Doc. 4 at 9.  He also requests the issuance of a writ of mandamus compelling Defendant to provide a detailed, line-by-line accounting of the debt, including the original principal, all payments received, interest assessed, and the current account balance.  Doc. 4 at 9.

Federal Rule of Civil Procedure 65 provides that "the Court may issue a temporary restraining order without written or oral notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1).

Additionally, the Court may grant a temporary restraining order only when the movant establishes *each* of the following elements:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011) (citation omitted).

As an initial matter, it is unclear whether Defendant has received notice of the TRO motion.  In the motion's certificate of service, Plaintiff states that service of the complaint and motion "*will* be effected through USPS Certified Mail" and that proof of service "will be submitted to the Court through the CM/ECF system."  Doc. 4 at 10.  However, elsewhere in the same filing, Plaintiff asserts that a copy of the motion was included in the initial service of the Complaint and Summons on March 20, 2026.  Doc. 4 at 11.  This statement is difficult to reconcile with the Clerk's file stamp, which reflects that both the Complaint and the TRO motion were filed on March 26, 2026.  *See* Doc. 3 at 1; Doc. 4 at 1.

In light of these inconsistencies, the Court issued a notice of deficiency on March 27, 2026, directing Plaintiff to request the issuance of summons, effect service of process, and file proof of service in accordance with Federal Rules of Civil Procedure 4(m) and 4(l).  *See* Doc. 5.  Plaintiff subsequently caused summons to issue, *see* Doc. 6; Doc. 8, and on April 2, 2026, he filed a proof of service indicating that the government agencies and official were served via certified mail.  Doc. 9 at 1.  However, the proof of service does not demonstrate that service fully complied with the Federal Rules.  It does not indicate that the documents were mailed by a non-party in accordance with Rule (c)(2), does not include a server's affidavit in accordance with Rule (l), and does not specify which documents were served.  *See generally* Doc. 9.

Because the record does not show that service was properly effected or that the proper parties have otherwise received notice of the TRO motion, the request is appropriately

considered as one made without notice.  Accordingly, Plaintiff must satisfy the requirements for issuance of an ex parte TRO under Rule 65(b)(1).

Upon review, the motion does not meet either of Rule 65(b)(1)'s requirements. Plaintiff's Complaint is not verified, and he did not include an affidavit in support of his motion. *See generally* Doc. 3; Doc. 4.  He also fails to adequately explain what, if any, efforts have been made to give notice to Defendants or the reasons why notice should not be required.  Doc. 4 at 10.  Because Plaintiff has not satisfied the requirements of Rule 65(b)(1), the motion should be denied on this basis.

Further, even assuming *arguendo* that Defendant has received notice, Plaintiff has not shown that the *Janvey* factors favor the issuance of a TRO.  Most importantly, he has failed to demonstrate a substantial likelihood of success on the merits.  Plaintiff acknowledges that he has filed at least two prior actions challenging the validity of the underlying civil penalty and the government's debt collection efforts.  *See* Doc. 3 at 2, 9.  In 2021, Plaintiff filed suit in the Northern District of Texas seeking declaratory relief under the APA related to the government's collection of the FBAR penalty.  *See Ades v. United States*, No. 3:21-cv-257-M-BN (N.D. Tex. 2021), Doc. 3 at 1.  Plaintiff also states that, in October 2025, he filed a mandamus action in the United States District Court for the District of Columbia, "seeking to compel [the] Treasury to provide an accounting and payment information" related to the FBAR penalty.[1]  Doc. 3 at 9 (citing Case No. 1:25-cv-03737, sealed).

---

[1] The Court has also identified a 2020 action filed in the United States District Court for the Eastern District of Texas, styled *Ades v. United States*, No. 4:20-cv-89-RWS-CAN (E.D. Tex. 2020), in which Plaintiff asserted a claim for "impermissible threat of debt collection activities" against the United States Department of Treasury Bureau of the Fiscal Service.  *See* No. 4:20-cv-89, Doc. 1; Doc. 19 at 12-13.

Although Plaintiff attempts to distinguish the earlier Northern District of Texas action from this case, he makes no such effort with respect to the District of Columbia action. Doc. 3 at 3, 9. Indeed, he appears to acknowledge that the District of Columbia action sought relief identical to that requested here—namely, a writ of mandamus compelling the Treasury to provide an accounting of the debt. *See* Doc. 3 at 9. In the absence of additional information, the Court therefore questions whether Plaintiffs claims have been or are currently being litigated elsewhere, thus implicating issues of federal comity and res judicata.

Moreover, in light of the Court's prior dismissal of plaintiff's APA claims on statute of limitations grounds, *see* No. 3:21-cv-257, Doc. 18 at 5; Doc. 22, the Court further questions whether Plaintiff's current APA claims are timely. Given these concerns, and Plaintiff's failure to address whether Defendant, the Secretary of the Department of Treasury, is immune from suit, Plaintiff has not demonstrated a substantial likelihood of success on the merits.

Plaintiff likewise fails to show that he will suffer immediate and irreparable injury in the absence of a TRO. *Janvey*, 647 F.3d at 595. While Plaintiff alleges an "ongoing financial harm" resulting from Defendant's offsetting $3,375 per month from his federal benefits and reimbursement credits, he has not shown that this financial harm cannot be cured by monetary damages. *See Plaisance v. La*, No. 21-cv-121, 2021 WL 1015879, at *2 (M.D. La. Mar. 16, 2021) (Jackson, J.) (noting that financial harms "are generally not irreparable because they can be addressed by monetary damages) (citing *Janvey*, 647 F.3d at 600 ("In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages.")). Further, although Plaintiff alleges that HUD could terminate his employment under a policy prohibiting their employees from being indebted to the government, he does not explain the exigency of this risk, particularly given that he has carried this debt for nearly 20 years. Doc. 4 at 6-7.

As outlined above, Plaintiff has failed to satisfy the legal requirements of Rule 65(b)(1) or show that the *Janvey* factors weigh in favor of injunctive relief. Accordingly, Plaintiff's *Emergency Motion for Temporary Restraining Order and Preliminary Injunction,* Doc. 4, should be **DENIED**.

**SO RECOMMENDED**, April 3, 2026.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).